IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| United States of America : | |
| : | Case No. CR-1-06-073 |
| : | |
| : | District Judge Susan J. Dlott |
| v. : | |
| : | ORDER DENYING |
| Michael Jones : | DEFENDANT'S MOTIONS TO |
| : | SUPPRESS |
| Defendant : | |

This matter comes before the Court on Defendant Michael Jones' Motion to Suppress (doc. #18) and Supplemental Motion to Suppress (doc. # 24). The Court held a hearing on the motions on August 30, 2006. For the reasons that follow, the Court **DENIES** Defendant's motions.

**I.      FACTUAL BACKGROUND**

On March 25, 2006, Officer Thomas Weigand of the Cincinnati Police Department ("CPD") was on duty as a uniformed officer patrolling in a marked police car. While traveling northbound on Victory Parkway, Officer Weigand observed a white Ford Expedition that was traveling southbound cross the double yellow line and veer into his lane. Officer Weigand next observed the Expedition drive over a curb and come to a rest partially on the grass in the 4000 block of Victory Parkway.

Pulling over to investigate the vehicle, Officer Weigand turned on his rear flashing lights to alert oncoming traffic and ran a query of the license plate. The query revealed a warrant for a subject associated with the vehicle; however, the warrant was for an individual other than Jones.

Meanwhile, CPD Officers Reginald Lane and Daphne Law responded to the scene to assist Officer Weigand. Upon arrival, Officer Lane turned on his overhead lights so that they were flashing in a 360 degree rotation. Switching the lights to this setting automatically activated the police cruiser's Mobile Video Recording System ("MVR").[1] Accordingly, from that point on, the MVR recorded everything that occurred at the scene, including the officers' statements and any conversations that took place in Officer Lane's vehicle.

In addition to Officers Lane and Law, off-duty CPD Officer Daniel Carter happened to be traveling on Victory Parkway at that time and stopped to assist when he came upon the scene. Recognizing the Expedition, Officer Carter informed the other officers that he had recently stopped the same vehicle on Victory Parkway and that on that occasion he had recovered a firearm from Jones, who was operating the vehicle.

Together, the officers approached the vehicle. Officer Carter recognized the individual in the driver's seat as Jones, the same individual he had previously stopped. When the officers approached, Jones was slumped down in the seat and appeared to be passed out. There were no other occupants in the vehicle and the officers had not observed anyone exit the vehicle.

Officer Weigand knocked on the driver's side window, attempting to wake Jones. The officers eventually woke Jones and asked him to exit the vehicle. Officer Lane immediately smelled

---

[1] The MVR is part of the police cruiser's standard equipment. The system involves two components – an audio and a visual component. The visual component consists of a camera that is mounted in plain view on the windshield of the cruiser. The audio component consists of a microphone attached to the officer's uniform as well as a microphone inside the police cruiser.

The MVR is linked with the flashing lights on the top of the police cruiser, such that switching the lights to certain settings automatically activates the MVR. Specifically, there are three settings for the lights. The first setting points the flashing lights to the rear; the second setting rotates the lights 360 degrees; and the third setting points the lights to the front. Switching the lights to the second or third setting simultaneously activates the MVR.

a strong odor of alcohol on Jones' breath when Jones exited the Expedition. The officers then observed a loaded silver Smith & Wesson 9mm caliber pistol on the driver's seat where Jones had been sitting. Officer Law seized the weapon.

The officers handcuffed Jones and placed him under arrest for driving under the influence. Officer Weigand conducted a search of Jones' person and discovered approximately 3.24 grams of marijuana and $1,130 in Jones' front, right pocket. The officer also discovered a cell phone but did not seize this item. Meanwhile, Officer Law searched the interior of the Expedition. She recovered approximately 6.57 grams of cocaine base and 2.28 grams of cocaine from the center console. She also found an open bottle of champagne in the back seat.

The officers placed Jones in the backseat of Officer Lane's police cruiser. Initially, Jones was alone in the vehicle. During this time, Jones made a telephone call to an unknown female with his cellular phone, using the speaker phone option because he was handcuffed. While Jones was still on the phone, Officer Lane returned to the police cruiser and advised the Defendant of his *Miranda* rights. Officer Lane then exited the cruiser, once again leaving Jones alone. At this time, Jones admitted to the unidentified female on the cell phone that he had fallen asleep while driving. Jones also stated that he had recently purchased a new gun. Jones continued his conversation after Officer Lane returned to vehicle and did not conclude the call until the officer directed him to do so. Unbeknownst to Jones, the MVR recorded the conversations he had while seated in the police cruiser.

## II.     ANALYSIS

Defendant Jones filed two motions to suppress. With the first motion (doc. # 18), Jones seeks to suppress the evidence discovered in the search of his person and the search of the Ford

Expedition. With the second supplemental motion (doc. # 24), Jones seeks to suppress the recording of the telephone call that he made while in the police cruiser.

**A.     Search of Jones' Person and Vehicle**

With his Motion to Suppress, Jones contends that the evidence collected from the warrantless search of his person and vehicle is inadmissible because the officers lacked reasonable suspicion to stop and detain him. According to Jones, he was not engaged in any "'unusual conduct' which would reasonably lead the officers to conclude that criminal activity was afoot pursuant to *Terry v. Ohio*," 329 U.S. 1 (1968). (Doc. # 18 at 3.) Therefore, Jones contends that all evidence seized as a result of the initial stop must be suppressed.

The Government counters that Officer Weigand's observation of Jones crossing the double yellow line and driving into oncoming traffic and then coming to a rest after driving over the curb on Victory Parkway gave rise to a reasonable suspicion that Jones was driving under the influence, justifying the initial stop and investigatory detention of Jones. Further, the Government contends that upon perceiving a strong odor of alcohol emanating from Jones and observing the firearm sitting in plain view on the driver's seat, the officers had probable cause to arrest Jones and to conduct a search of Jones' person and vehicle incident to the arrest.

An officer may "stop and briefly detain a person for investigatory purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot.'" *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (quoting *Terry*, 392 U.S. at 30). "The officer, of course, must be able to articulate something more than an 'inchoate and unparticularized suspicion or 'hunch.'" *Id*. at 7 (quoting *Terry*, 392 U.S. at 27). The Court considers the totality of the

surrounding circumstances in determining whether the officer has a particularized and objective basis for suspecting criminal activity. *United States v. Arvizu*, 534 U.S. 266, 274 (2002).

The Sixth Circuit has held that a *Terry* stop is not unlawful "so long as the officer has probable cause to believe that a traffic violation has occurred or was occurring." *United States v. Ferguson*, 8 F.3d 385, 391 (6th Cir.1993). Moreover, an officer need only possess reasonable suspicion rather than probable cause to stop a vehicle upon suspicion that the driver is intoxicated. *Gaddis ex rel. Gaddis v. Redford Tp.*, 364 F.3d 763, 770 (6th Cir. 2004).

Arguing that the officers in the instant case lacked reasonable suspicion to stop him, Jones relies heavily on the United States Supreme Court's decision in *Florida v. J.L.*, 529 U.S. 266 (2000). In *J.L.*, the Supreme Court held that police officers did not have reasonable suspicion to conduct a *Terry* stop based only upon an anonymous tip of unknown reliability. *Id*. at 272-73. The Court also noted that the "reasonableness of official suspicion must be measured by what the officers knew before they conducted their search." *Id*. at 271.

Other than with regard to the general proposition of law stated above, *J.L.* is irrelevant to the instant case. This case does not involve an anonymous informant. Rather, the Government bases its assertion of reasonable suspicion on Officer Weigand's observation of Jones' erratic driving. Specifically, Officer Weigand saw the Defendant swerve over the double yellow lines on Victory Parkway and drive into oncoming traffic. Subsequently, Jones jumped the curb and came to a rest at a diagonal, with the front half of the Expedition resting over the curb on the grass and the rear half remaining on Victory Parkway. Under these circumstances, the officers had reasonable suspicion that Jones was either intoxicated or impaired and in need of assistance. *See Gaddis*, 364 F.3d at 771 (holding that an officer who observed a vehicle swerve twice had reasonable suspicion to stop the

5

motorist); *United States v. Roberts*, 986 F.2d 1026, 1029 (1993) (holding that an officer who responded to a complaint that the defendant was drunk and disorderly but found no one present at the defendant's home had reasonable suspicion to stop a vehicle that he later observed near the defendant's home, after seeing the vehicle drive in the middle of the road and then swerve to the right). Accordingly, the initial stop was lawful.

The Government next contends that probable cause to make an arrest developed when Jones exited the vehicle, justifying a search incident to arrest of Jones' person and vehicle. Defendant Jones does not argue that the officers lacked probable cause to arrest him. Instead, he focuses solely on the officers' initial authority to stop him. Nonetheless the Court briefly discusses the issue herein.

The Government states that the officers arrested Jones for driving under the influence. Ohio law prohibits only driving while intoxicated, but not merely driving after consuming a drink. *State v. Taylor*, 3 Ohio App.3d 197, 198, 444 N.E.2d 481, 482 (Ohio App. 1st Dist. 1981). Therefore, the perception of a slight odor of alcohol does not give rise to probable cause to arrest an individual for driving under the influence. *See id.* (holding that the "mere odor of alcohol about a driver's person, not even characterized by such customary adjectives as 'pervasive' or 'strong,'" coupled with the officer's observation that the driver had been speeding does not give rise to probable cause).

However, the Ohio Court of Appeals for Hamilton County has suggested that the perception of a "strong" odor of alcohol, coupled with "corroborative evidence of intoxication" such as "weaving, improper lane changing, or other indication of impaired control of the vehicle" may give rise to probable cause to arrest an individual for driving under the influence. *See id.*; *State v. Mills*, NO. C-830607, 1984 WL 6871, at *1 (Ohio App. 1 Dist. April 18, 1984) (unpublished opinion)

6

(holding that an officer had probable cause to arrest a driver where the officer observed the driver speed through a red light and detected a moderate odor of alcohol on the driver's breath, and where the driver had bloodshot eyes and admitted to having a couple drinks); *State v. Lopez*, Nos. C-020516, C-020517, 2003 WL 1938217, at *3 (Ohio App. 1 Dist. April 25, 2003) (unpublished opinion) (holding that probable cause existed where the driver was speeding, had bloodshot eyes and a strong odor of alcohol on his breath, and admitted to having two beers).

In the instant case, the Officers not only perceived a strong odor of alcohol on Jones, but also observed several other telltale signs of intoxication, beginning with Jones' erratic driving. Next, upon approaching Jones' vehicle, the officers found that Jones was passed out, suggesting that he had either passed out while driving or shortly thereafter. Finally, Officer Lane testified that Jones' speech was so slurred that it was difficult to understand what he was saying. Together, these facts established probable cause that Jones was driving while intoxicated. Consequently, the officers were justified in searching Jones and the Expedition and the evidence found during the search is admissible. *See United States v. Mans*, 999 F.2d 966, 968-69 (6th Cir.1993) ("A police officer may search the passenger compartment of an automobile incident to the lawful custodial arrest of the occupant of the vehicle without a warrant or probable cause."); *Chimel v. California*, 395 U.S. 752, 763 (1969) (stating that an officer may conduct a search incident to arrest of the defendant and seize any weapons, contraband, or other evidence).

**B.     The Recorded Telephone Conversation**

Defendant Jones next moves to suppress the recording of any statements that he made while seated alone in the police cruiser. Jones argues that by recording his cell phone conversation without his consent, the Government violated his Fourth Amendment right to be free from

7

unreasonable search and seizure as well as Title III of the Omnibus Crime Control and Safe Streets Act, 18 U.S.C. § 2511. The Government opposes Jones' motion on the basis that Jones had no reasonable expectation of privacy while in the police cruiser and as such, the officers were under no obligation to obtain Jones' consent prior to recording the conversation.

Title III prohibits the unauthorized interception of wire, oral, or electronic communications. 18 U.S.C. § 2511. Additionally, 18 U.S.C. § 2515 provides that "[w]henever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court . . . if the disclosure of that information would be in violation of this chapter."

Title III further defines "oral communication" as "any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation, but such term does not include any electronic communication." 18 U.S.C. § 2510(2). Several courts have held, based on the language and legislative history of Title III, that when determining whether a conversation qualifies as an "oral communication" the key question is whether the person invoking protection can claim a reasonable or justifiable expectation of privacy. *See United States v. McKinnon*, 985 F.2d 525, 527 (11th Cir. 1993); *United States v. Clark*, 22 F.3d 799, 801 (8th Cir. 1994); *United States v. Turner*, 209 F.3d 1198, 1200 (10th Cir. 2000); *Kee v. City of Rowlett, Tex.*, 247 F.3d 206, 211 n.8 (5th Cir. 2001).

Therefore, whether analyzing this case under the Fourth Amendment or under Title III, the inquiry is the same. For either protection to apply, the Court must conclude that: (1) the defendant had an actual, subjective expectation of privacy, and (2) that the defendant's subjective expectation

is one that society would objectively consider reasonable. *McKinnon*, 985 F.2d at 527 (citing *Smith v. Maryland*, 442 U.S. 735, 740 (1979) and *Katz v. United States*, 389 U.S. 347, 361 (1976).[2]

Defendant Jones argues that he had a reasonable expectation of privacy because he was alone in the police cruiser, all four doors were closed, and he did not believe that anyone could hear him speak. The Government responds that due to the mere nature of the police cruiser and the fact that the camera component of the MVR was in plain view Jones could not reasonably have expected that his conversation would be private. Additionally, the government argues that Jones did not exhibit a subjective expectation of privacy, pointing to the fact that Jones continued the conversation after an officer entered the vehicle.

While the Sixth Circuit has yet to address this issue, several other courts have held that individuals have no objectively reasonable expectation of privacy while seated in a police cruiser. *See McKinnon*, 985 F.2d at 527-28; *Clark*, 22 F.3d at 802 ("The general public has no reason to frequent the back seat of a patrol car, or to believe that it is a sanctuary for private discussions. A police car is not the kind of public place, like a phone booth, where a person should be able to reasonably expect that his conversation will not be monitored." (internal citations omitted)); *Turner*, 209 F.3d at 1201; *Cox v. Bunnell*, No. 89-55960, 1990 WL 191702, at *1 (9th Cir. Nov. 30, 1990) (unpublished opinion); *Gross v. Taylor*, No. Civ.A. 96-6514, 1997 WL 535872, at *6 (E.D. Pa. Aug. 5, 1997) (unpublished opinion); *Gallardo v. United States*, No. 1:05CV1260, 2005 WL 1828776, at *2 (N.D. Ohio Aug. 2, 2005) (unpublished opinion) (holding that the defendant had no

---

[2]With regard to Title III, the Defendant cites two cases in which courts have held that the unauthorized monitoring of a person's telephone conversations violate Title III. *See Campiti v. Walonis*, 611 F.2d 387 (1st. Cir. 1979); *United States v. Gomez*, 900 F.2d 43 (5th Cir. 1990). However, neither of these cases address whether the defendants had a reasonable expectation of privacy. As such, they provide little guidance for the instant case.

expectation of privacy in a police vehicle where a sign was posted in the vehicle indicating that it contained a recording device).

Arguing that the Court should nonetheless hold that Jones did have a reasonable expectation of privacy in the police cruiser, the Defendant likens the back of a police car to the back of a cab. Without addressing the nature of one's expectation of privacy in a cab, the Court finds this analogy untenable. A police cruiser is not a vehicle for hire. Often, as in this case, when an individual finds him or herself in the back of a police cruiser, it is because that individual was engaged in some form of criminal activity. Less like a cab and more like a police officer's mobile office, a police officer's vehicle is inherently within the sole control of the officer. Moreover, police cruisers are typically equipped with various radio and video devices, such as those at issue in the instant case, that are in plain view and that are capable at any instant of transmitting or recording statements made inside the cruiser. *See Turner*, 209 F.3d at 1201 ("Patrol cars bristle with electronics, including microphones to a dispatcher, possible video recording with audio pickup, and other electronic and recording devices.").

Finally, the statements that Jones seeks to suppress are statements that he made after the officers placed him under arrest and *Mirandized* him. Under these circumstances and in light of the above case law, the Court finds that even if Jones had a subjective expectation of privacy, the expectation was not reasonable. Accordingly, the recording of his statements violated neither the Fourth Amendment nor Title III and Jones' statements are admissible.

### III. CONCLUSION

For the reasons stated above, the physical evidence seized in connection with the search of Defendant Jones and Jones' vehicle as well as the recording of the statements that Jones made while

seated in the police cruiser are admissible.  Accordingly, Defendant Jones' Motion to Suppress (doc. # 18) and Supplemental Motion to Suppress (doc. # 24) are **DENIED**.

  IT IS SO ORDERED.

                ___s/Susan J. Dlott_____
                Susan J. Dlott
                United States District Judge